**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON, DIVISION**

| | | |
|---|---|---|
| **CYNTHIA NICHOLAS, individually,** | § | |
| **and as representative of the ESTATE** | § | |
| **OF JASON LEJUNIE,** | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **VS.** | § | **CASE NO. _____** |
| | § | |
| **BRAZOS COUNTY,  and SHERIFF** | § | |
| **CHRISTOPHER C. KIRK,** | § | |
| **DEFENDANTS** | § | |
| | § | |

## ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, Cynthia Nicholas, individually, and as a representative of the Estate of Jason LeJunie, files this his original petition complaining of the following Brazos County, Sheriff Christopher C. Kirk, (both acting under the color of law) would respectfully show as follows:

### I.  INTRODUCTION AND FACTS

1.     On May 3, 2018, at 8:09 am Bryan Police pulled Jason over for alleged stop sign violation.

2.     The officer didn't give him a ticket. The officer took Jason right over to the county jail at 8:28 am. Never giving Jason a phone call. He always called his mother,  He would never make his mother worry or leave his dog and when he didn't call she knew

something was wrong so she made a missing person's report, 15 minutes later Ms. Nichols received a call informing her that her son was in jail. This was after she called the Brazos County jail twice only to be advised he was in custody.

3.      Text messages from his phone Jason telling a friend they didn't tell mom he was in there and "I didn't get a phone call."

4.      The first call Jason made was May 6th, 2018 at 10:44 am from that jail. Ms. Nicholas heard four times from her son that day, Jason told his mother they were not giving him any of his medicines.

5.      Jason had a blood clot in right leg diagnosed March 30, 2017, and blood dots in left leg Feb. 5, 2018, high blood pressure, one kidney, CFIDS, back jury, anxiety, gout, and phlebitis.

6.      Jason told his mom he had not seen a doctor in the county jail, he only saw nurses and EMTs, and they were giving him a white pill and that they wouldn't tell him the name of the pill, and a TB test. Jason advised his mother that he was not given any of his medicines while in the county jail. Jason always took his medicines as prescribed.

7.      Ms. Nichols advised the jail medical personally on May 5th and 6th 2018 about Jason's health conditions that he had blood clots in his legs, high blood pressure, one kidney, CFIDS, back jury, anxiety, gout and phlebitis and he likely couldn't remember some of the names of his medicines.

8.      Jason never received any of his medicines prescribed by his physician while in the

county jail.

9.     His mother, Cynthia Nichols was worried sick about Jason and his health and had

every right to be, so she wrote to Governor Gregg Abbott, and the Texas Commission on

jail standards.

> *"Dear Governor Gregg Abbott,*
>
> *I, Cindy Nichols have written and called your office about this issue many times.*
>
> *Your staff keeps telling me you can't help with this matter. When I know you have the Authority to do so. My son, Jason LeJunie and I need your help with this matter right away. Jason is in the Brazos County Jail for back child support. Jason has been there for seven days. Jason and I are worried about his health. He needs to be released right away. Jason has a Blood Clot in right leg, High Blood Pressure, One Kidney, Back Problems due to a disc that slips out of the vertebra, Anxiety, (CFIDS) Chronic Fatigue Immune Dysfunction Syndrome and has been battling Gout on and off. Jason's had Gout within the last two weeks. The Jail has received Jason's Medical records on Tuesday 5/8/18 before lunch. They haven't given him his meds. The jail gives Jason what they want him to have. Not what his doctor prescribes for him that works for his health issues. This is a severe issue... By March 30, 2017, I, took him to the ER. We were told Jason had a massive blood clot in his left leg from his ankle to his grown. Jason was hospitalized right away. We were told that this is very severe. The blood clot could travel and kill him at any time...Please help me immediately with this matter. Jason has been incarcerated since May 3, 2018. That's seven days too long for his health..."*

10.    He was no criminal, by any means, he was in custody for alleged back child

support which he was paying that doesn't make him a criminal.

11.     They knew Jason had medical issues because they requested his medical records on May 4th, 2018, but did nothing more beyond the request.

12.     The jail received his medical records from his outside physicians but disregarded his medical history otherwise they would not have assigned him on a top bunk because it is common knowledge that blood clots travel.

13.     The eight days Jason was in the county jail, they didn't give him any of these medicines.

14.      His medical records sent to the jail reflected that he was prescribed 2mgs of Alprazolam 3x a day, Aspirin 325mg once a day, 20mg Lisinopril 10 mg once a day with 25 mg hydrochlorothiazide,  and 10mg Oxycodone every 4-6 hours.

15.     The medications prescribed were for his diagnosed hypertension, chronic anxiety, chronic back pain, thrombosis of superficial veins of the lower limb, and musculoskeletal, May 10, 2018, his last day in jail Jason was in a holding cell all day.

16.     Jason LeJunie was released from jail on May 10, 2019, but the damage was already done.

17.     The first call to his mother was at 5:51 pm, again she stated the jail never gave him any of his medicines when his mother picked him up at 9:22 pm. She give him his medication and he took his medications immediately in the car, on the way home.

18.     Jason Lejunie was last seen alive May 14, 2018, at 10:02 am, on the surveillance camera. The day he was found dead in his home from Pulmonary Embolism due to deep

venous thrombosis, according to the autopsy performed by J. Keith Pinckard, MS Ph.D. on July 1, 2018.

19.     Ms. Nicholos made a request any and all of Jason LeJunie's jail records from the sheriff's office, hand-delivered on June 11, 2018. The request has not been responded to date, in violation of Public Information act chapter 552.

20.     Sheriff, Christopher C. Kirk is tasked with the duty of providing adequate healthcare to the inmates in his jail, due to his failure to supervise or properly train his medical providers, Jason was denied medical care.

### III.     PARTIES

A.     Plaintiff, Cynthia Nichols ("Plaintiff") is a resident of Brazos County, Texas.

B.     Defendant, Christopher Kirk  is and was at all times relevant to this action a person under 42 U.S.C. § 1983 and at all times relevant to this case acted under the color of law and may be served with process wherever he may be found.

21.     Brazos County ("Defendant") is and was at all times relevant to this action a governmental entity and is a person under 42 U.S.C. § 1983 and at all times relevant to this case acted under the color of law and may be served with process wherever the County Judge may be found.

22.     This Court has jurisdiction over Plaintiff's state and federal claims, under 28 U.S.C. § 1331 and 2201, 42 U.S.C § 1983 and 1988, and the Fourth, Fifth, Eighth, and

Fourteenth Amendments to the United States Constitution, and supplemental jurisdiction under 28 U.S.C. § 1367(a), to hear Plaintiffs' state law claims if any.

23.   Venue is proper in this Court under 28 U.S.C. § 1391(b) because the incidents at issue took place in Brazos County, Texas, within the United States Southern District of Texas.

IV.   Claims For Relief

Claim 1: 42 U.S.C. § 1983

24.   The Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if set forth at length herein in this section.

25.   This suit is brought pursuant to 42 U.S.C. § 1983, which is entitled the Civil Rights Act.  The critical language of the Civil Rights Act sets forth, in part:

*"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."Fourteenth and Fourth Amendments:  Due Process, Unlawful Search, Seizure, and Detention.*

26.     On May 03, 2018, Brazos County was acting under the color of state law when it denied Jason LeJunie medical care, without proper reason or authority, with deliberate indifference to the rights of Mr. LeJunie.

27.     Defendant Harris County as a matter of policy, practice, custom and/or procedure did not have adequate staffing, had a practice and custom of not doing rounds, had a custom and practice of not checking to see if detention officers were doing rounds, and failed to provide and maintain adequate equipment to prevent suicide despite past warnings from the Texas Commission on Jail Standards.

28.     Defendant Harris County, their employees, and their agents, failed to train and failed adequately supervise the actions and omissions of the jail detention officers and employees and agents of the Harris County, Texas jail.

29.     Prior to his death Jason LeJunie did not receive adequate medical care for his withdrawal symptoms due to the policies of the Harris County jail causing much pain and mental anguish including suicidal ideations.

30.     Jason LeJunie's death was due to the acts and omissions of Defendant and those acts and omissions violated his constitutional right to due process, to be free from unreasonable search and seizure and the privileges and immunities and rights guaranteed by the Fourteenth Amendment, making Defendant liable to Plaintiffs under and pursuant to 42 U.S.C. § 1983, 1985.

31.     At all times relevant hereto, Plaintiff had an inalienable and fundamental liberty interest protected by the Constitution.

32.     Mr. LeJunie had the right to adequate medical care under the 4th amendment.

## V. Wrongful Death Statute

33.     The Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if set forth at length herein in this section.   The Plaintiffs bring this wrongful death action pursuant to the Texas Civil Practice and Remedies Code § 71.004 (c). Pursuant to Texas Civil Practice and Remedies Code § 71.002, and Texas statutory and common law, the Defendants are liable for their actions and omissions and their employee's actions omissions, including, without limitation, their agents and officers.

34.     Jason LeJunie died as a result of the Defendants' deliberate indifference, reckless, wrongful acts and omissions, neglect, and carelessness actions.

35.      Jason LeJunie would have been entitled to bring this action against Defendants if he had lived.

36.     A reasonable and competent member of the law enforcement profession would have exercised under similar circumstances duties to:

> a.  provide adequate medical care, not impose cruel and unusual punishment;
>
> b.  Exercise ordinary or reasonable care;
>
> c.  Exercise the degree of care, skill, and competence that a reasonable officer would exercise.  The Defendants breached all of their duties.

37.     The Defendants' acts and omissions, jointly and severally, proximately caused injury and death to Jason LeJunie.

38.     The Plaintiffs seek unliquidated damages within the jurisdictional limits of this Court.

Count 3:  Survival Claim

39.     The Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if set forth at length herein in this section.

40.     Pursuant to Texas Civil Practice and Remedies Code § 71.021 and Texas statutory and common law, the Defendants are liable for their actions and omissions and their employee's actions omissions, including, without limitation, their agents and officers.

41.     Mr. Jason LeJunie had causes of action for personal injury to his person under the Texas Tort Claim Act, negligence statute, and 42 U.S.C. § 1983 before he died.

42.     Mr.  LeJunie would have been entitled to bring an action for the injury if he had lived, namely pain and suffering, as a result of the negligence and civil rights violations.

43.     The Defendants' wrongful acts and omissions, jointly and severally, caused Mr. LeJunie's injuries for which the Plaintiffs sue for all damages allowed by law.

VI.     Jury demand

44.     The Plaintiff demands a trial by jury on all issues triable to a jury.

VII.    Damages

9

45.     The Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if set forth at length herein in this section.  Plaintiff experienced, and in all likelihood will experience, at least great pain and suffering in the past and in the future, great mental anguish in the past and future, loss of enjoyment of life, loss of consortium, loss of financial support and household services, comfort, and love and society. Plaintiff seeks exemplary damages. Plaintiff also brings claims for violations of Jason LeJunie's Fourth, and Fourteenth Amendment rights.

46.     Plaintiff has been damaged by the loss of companionship, consortium, and support that would have been provided by Jason LeJunie but for his preventable death while in custody.

47.     Jason LeJunie suffered great mental anguish and pain in the minutes and hours before his death and such is actionable through his estate and funeral expenses are recoverable as well.

48.     Find that Plaintiff is the prevailing party in this suit at bar and award attorneys' fees under 42 U.S.C. § 1988, expert fees, and court costs pursuant to state and federal law.

49.      The Plaintiff respectfully requests this Court to:

Find that the Defendant is the non-prevailing party.

Award actual damages to the Plaintiff for the violations of Mr. LeJunie's Constitutional rights.

Award prejudgment and post-judgment interest.

Award pain and suffering damages to the Plaintiff

Award Mental Anguish damages to the Plaintiff

Award emotional distress damages to the Plaintiff.

Award exemplary damages to the Plaintiff. All individuals sued are liable for punitive damages as he were deliberately indifferent to Mr. LeJunie's constitutional rights and he did the acts knowingly, such acts, include recklessly detaining Mr. LeJunie by holding him for civil penalty and not for being suspected of a crime. These acts being extreme and outrageous and shocking to the conscious.

## IX.   Attorneys' Fees

After prevailing herein, the Plaintiff is entitled to recover reasonable and necessary attorneys' fees and costs to enforce his Constitutional rights under 42 U.S.C. §§ 1983 and 1988 from the Defendant, as the prevailing parties.

## X.   Prayer for Relief

For the reasons set forth herein, Plaintiff respectfully request that the Defendant Brazos County be cited to appear and answer herein, and that the Plaintiff have a final judgment against the Defendant for actual damages above the jurisdictional minimum of the Court, compensatory damages above the jurisdictional minimum of the Court, nominal damages above the jurisdictional minimum of the Court, mental anguish, exemplary damages as

allowed by law, pre-judgment and post-judgment interest, costs of court, attorneys' fees and expenses, and all other relief to which the Plaintiff is justly entitled, at law or in equity.

Respectfully submitted,

By:/s/U.A. Lewis
The Lewis Law Group
U.A. Lewis
SBN: 24076511
FBN: 1645666
P.O. Box 27353
Houston, TX 77227
Phone: (713) 570-6555
Fax: (713) 581-1017
MyAttorneyAtLaw@gmail.com
Attorneys for the Plaintiff