IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON, DIVISION

| | | |
|---|---|---|
| CYNTHIA NICHOLS, individually, § | | |
| and as representative of the ESTATE § | | |
| OF JASON LEJUNIE, § | | |
| PLAINTIFF, § | | |
| § | | |
| v. § | CASE NO. 4:19-cv-02820 | |
| § | | |
| BRAZOS COUNTY, SHERIFF § | | |
| CHRISTOPHER C. KIRK, § | | |
| DOE-Medical Supervisor, DOE-Jail § | | |
| Physician, and DOE-Jail Nurse § | | |
| DEFENDANTS | | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, Cynthia Nichols, individually and as a representative of the Estate of Jason LeJunie, files this his first amended complaint complaining of the following Brazos County, Sheriff Christopher C. Kirk, individually, DOE-Medical Supervisor, individually, DOE-Jail Physician, individually, and DOE-Jail Nurse, individually would respectfully show as follows:

I.   INTRODUCTION AND FACTS

1.     At 8:09 a.m. on May 3, 2018, a City of Bryan police officer activated its lights and stopped Jason LeJunie for a minor traffic infraction.

2.     Specifically, the officer informed Jason that he stopped him for an alleged stop sign violation.

1

3. The officer did not issue a traffic citation to Jason.

4. Rather, the officer arrested Jason for delinquent child support and took him to the Brazos County Detention Center (the "Brazos County Jail") at 8:28 a.m.

5. At intake, Jason informed the medical staff of all of his medical conditions.

6. On March 30, 2017, Jason was diagnosed with blood clots in both of his legs.

7. On February 5, 2018, he was also diagnosed with high blood pressure, one kidney, CFIDS,[1] a back injury, anxiety,[2] gout, and phlebitis (also known as deep vein thrombosis ("DVT") or thrombophlebitis, which is vein inflammation).

8. On February 21, 2018, Jason's primary care medical records revealed that his lymph nodes were swollen and are irritated from going back to work and being up and down as a mechanic most of the time.

9. Prior to his custody, Jason always took his prescribed medicine for his medical conditions.

10. It is common knowledge in the medical field that DVT is a chronic illness that may cause complications if a person does not take medications according to the doctor's instructions.

11. However, despite this common knowledge, no doctor evaluated or assessed Jason;

---

[1] CFIDS is an acronym for chronic fatigue and immune dysfunction syndrome, which is a disease characterized by profound fatigue, sleep abnormalities, pain, and other symptoms that are made worse by exertion.

[2] Jason's primary care physician prescribed Xanax to Jason for his anxiety. At this time, he may have already started withdrawing from Xanax, which likely limited his ability to recall all of his medication history.

only nurses and EMTs.

12. Nurses are not to perform physical exams, but report findings to physicians. Jason never saw a physician, so there was no medical treatment for his serious medical need

13. Indeed, the doctors at Brazos County Jail did not independently assess Jason of all of his medical conditions.

14. He was exposed to the risk of Respiratory failure, ARDS, Sepsis, Lung abscesses as his bronchopneumonia went untreated

15. Further, the DOE-Medical Supervisor, DOE-Jail Physician, DOE-Jail Nurse, or other medical staff at Brazos County Jail did not administer any medication to Jason to address any of his medical conditions.

16. Finally, DOE-Medical Supervisor, DOE-Jail Physician, DOE-Jail Nurse, and medical staff at Brazos County Jail did not adequately follow up and monitor Jason, knowing that he had several chronic illnesses.

17. After intake, the medical staff released Jason to general population. He was assigned a top bunk, although it is common knowledge that blood clots travel upward.

18. Many hours after Jason was booked at the Brazos County Jail, no one allowed Jason to make a telephone call.[3]

19. Had he had the opportunity to make a telephone call, he would have contacted his

---

[3] Later, after Jason's death, it was discovered that upon his release from custody he sent text messages from his phone to a friend stating that the jail officials did not tell Ms. Nichols that he was in custody and that he did not get a telephone call.

mother, Cynthia Nichols, because he never wanted to make his mother worry or abandon his dog.

20. Meanwhile, Ms. Nichols knew something was wrong with Jason. It was unusual for her not to hear from him.

21. Ms. Nichols contacted the Brazos County jail twice to inquire about her missing son.

22. She then filed a missing person's report.

23. Fifteen minutes after filing the report, Ms. Nichols received a call informing her that Jason was being held in the custody of Brazos County Jail.

24. On May 4, 2018, Brazos County Jail contacted Jason's primary care physician and requested his medical records.

25. According to Jason's medical records, his primary care physician noted that he was prescribed: (a) 2mgs of Alprazolam[4] three times per day; (b) 325mg of Aspirin one time per day; (c) 20mg of Lisinopril 10 mg once a day with 25 mg hydrochlorothiazide; (d) warfarin 5 mg tablet, 1 tablet(s) every day by oral route and (e) 10mg Oxycodone every four to six hours per day.

26. The medications prescribed were for his diagnosed hypertension, chronic anxiety, chronic back pain, thrombosis of superficial veins of the lower limb, and musculoskeletal.

---

[4] Alprazolam is also known as Xanax.

27. No medical personnel administered any of these medicines to Jason.

28. Nothing further was done by the Brazos County Jail medical personnel beyond this request for Jason's medical records.

29. Jason's top-bunk assignment even remained the same after DOE-Medical Supervisor, DOE-Jail Physician, DOE-Jail Nurse, and Brazos County Jail received his medical records.[5]

30. On May 5, 2018, two days after Jason was arrested, Ms. Nichols's concern for Jason's health increased exponentially.

31. She informed Brazos jail medical personnel about his serious health conditions.

32. She told the medical personnel that Jason had blood clots in his legs, high blood pressure, one kidney, CFIDS, a back injury, anxiety, gout, and phlebitis.

33. She also informed the medical personnel that Jason was likely suffering from Xanax withdrawals.

34. As he withdrawing from Xanax, it limited his ability to recall all of his medication history.

35. Xanax withdrawals can cause severe injuries organ failure, altered mental status, hallucinations, seizures, and even death.

36. On May 6, 2018, three days after Jason was arrested, the jail staff finally allowed Jason to make his first telephone call at 10:44 a.m.

---

[5] Medical experts recommend bottom-bunk assignments for people who have DVT.

37. Jason called his mother to notify her that he was in jail on his first telephone call.

38. Jason called Ms. Nichols three more times, informing her that the jail officials refused to administer his medication to him.

39. Jason's call prompted Ms. Nichols to call the jail medical personnel again and remind them about Jason's health conditions.

40. Ms. Nichols urged the officials to administer the appropriate medication to Jason.

41. Several hours later, he received a "white pill."

42. Jason received no answers when he asked DOE-Medical Supervisor, DOE-Jail Physician, and DOE-Jail Nurse, the name of the "white pill."

43. He received no answers when he asked the medical purpose of the "white pill."

44. He was simply instructed to swallow it.

45. The only other "medical attention" Jason received was a tuberculosis test.

46. Brazos County Jail, DOE-Medical Supervisor, DOE-Jail Physician, and DOE-Jail Nurse continued to refuse to provide medical treatment to Jason despite receiving many notifications from Jason and Ms. Nichols about his serious medical needs.

47. Jason complained of leg pain and swelling of his legs.

48. Jason never received any of his medicines prescribed by his primary care physician while he was in custody.[6]

---

[6] On January 1, 2018, the Sandra Bland Act amended the Government Code to require the Texas Commission on Jail Standards to adopt reasonable rules and procedures establishing minimum standards regarding the continuity of prescription medications for the care and treatment of prisoners. The rules and procedures require that a qualified medical professional shall review as soon as possible any prescription medication a prisoner is taking when the prisoner is taken into custody.

49. Brazos County Jail's failure to continue Jason's prescribed medications was in direct violation of the Texas Administrative Code, The Sandra Bland Act.[7]

50. Moreover, Brazos County Jail continues to withhold his medical records as of the date of this amended complaint, despite repeated requests.

51. On May 10, 2018, Ms. Nichols was so worried about Jason and his health that she not only contacted Brazos jail she wrote to Texas Governor Gregg Abbott stating:

> *"Dear Governor Gregg Abbott,*
>
> *I, Cindy Nichols, have written and called your office about this issue many times.*
>
> *Your staff keeps telling me you can't help with this matter. When I know you have the Authority to do so. My son, Jason LeJunie, and I need your help with this matter right away. Jason is in the Brazos County Jail for back child support. Jason has been there for seven days. Jason and I are worried about his health. He needs to be released right away. Jason has a Blood Clot in right leg, High Blood Pressure, One Kidney, Back Problems due to a disc that slips out of the vertebra, Anxiety, (CFIDS) Chronic Fatigue Immune Dysfunction Syndrome and has been battling Gout on and off. Jason's had Gout within the last two weeks. The Jail has received Jason's Medical records on Tuesday 5/8/18 before lunch. They haven't given him his meds. The jail gives Jason what they want him to have. Not what his doctor prescribes for him that works for his health issues. This is a severe issue... By March 30, 2017, I, took him to the ER. We were told Jason had a massive blood clot in his left leg from his ankle to his grown. Jason was hospitalized right away. We were told that this is very severe. The blood clot could travel and kill him at any time...Please help me*

---

[7] Texas Administrative Code Title 37 section 273.2(12) provides that procedures that shall require that a qualified medical professional shall review as soon as possible any prescription medication a prisoner is taking when the prisoner is taken into custody.

7

*immediately with this matter. Jason has been incarcerated since May 3, 2018. That's seven days too long for his health..."*

52. On May 10, 2018, seven days after Jason was arrested, the Brazos County Jail staff placed Jason in a holding cell all day.

53. Later in the day, the Brazos County Jail staff released Jason from county custody.

54. On the same day at 5:51 p.m., Jason called Ms. Nichols and told her that the medical personnel did not give him any of his medicine.

55. At 9:22 p.m., Ms. Nichols picked up Jason from jail and gave him his medication. He immediately took his medications while they were driving home.

56. The damage of not receiving his medication for the DVT and other medical conditions was already done.

57. On May 14, 2018, Jason was pronounced dead in his home.

58. He was last seen alive on their home surveillance-camera footage at 10:02 a.m. on that day.

59. According to the autopsy report performed by J. Keith Pinckard, MS Ph.D. on July 1, 2018, Jason's death resulted from a pulmonary embolism due to DVT.

60. Because the Brazos County Jail staff or medical personnel failed to administer his medications to him for the entirety of his incarceration, Jason's DVT and other medical conditions were so exacerbated that it caused him to die.

61. The Warfarin medication helps keep a clot from growing or breaking off and

traveling to his heart or lung (resulting in death) and it prevents new clots from forming.

62. If Brazos County Jail medical staff would have given Jason his medication, then the blood clots would not have formed, traveled throughout his body, or caused him to die, and he would still be alive to this day.

63. On June 11, 2018, Ms. Nichols visited Brazos County Jail and requested any and all of Jason's jail records from the Sheriff's Office.

64. The Sheriff's Office staff members denied Ms. Nichols's request.

65. To date, Brazos County Jail nor the Sheriff's Office have responded to Ms. Nichols's request, violating Chapter 522 of the Public Information Act.

66. Sheriff Christopher C. Kirk ("Sheriff Kirk") is tasked with the duty of providing adequate healthcare to the inmates in Brazos County Jail[8].

67. Because he failed to supervise and properly train the medical providers at the jail, Sheriff Kirk denied Jason adequate medical care.

68. Sheriff Kirk is the policymaker of Brazos County Jail.

69. Kirk is responsible for determining, amending, overseeing, and correcting the policies and practices at Brazos County Jail, including the policies and practices related to medical care of the inmates.

70. Kirk implemented an inadequate policy and practice of supervising medical care

---

[8] Texas Administrative Code Title 37 section 273 states, "The owner/operator of each facility shall provide medical, mental, and dental services in accordance with the approved health services plan. These services may include, but shall not be limited to, the services of a licensed physician, professional and allied health personnel, hospital, or similar services."

9

of inmates and to allow the medical personnel to ignore the serious medical needs because a doctor never personally and independently assess Jason during or after intake, which amounted to a failure to provide adequate medical care policy.

71. Furthermore, DOE-Medical Supervisor, DOE-Jail Physician, DOE-Jail Nurse, or any jail staff administered any of his prescribed medications to Jason.

72. Jason was given only one unknown "white pill" and he was not told what he had been given or why he must take it.

73. Jason needed at least at least 5 pills, including a white aspirin which is likely all her received.

74. That is what occurred in Jason's case.

75. And, most importantly, Sheriff Kirk's policies and practices do not require any follow up or monitoring even after receiving an inmate's medical records reflecting several chronic illnesses.

76. No one, including DOE-Medical Supervisor, DOE-Jail Physician, or DOE-Jail Nurse, followed up with or monitored Jason during his incarceration.

## II.   PARTIES

77. Cynthia Nichols (the "Plaintiff") is a resident of Brazos County, Texas. No other heirs were willing to bring the claim. Therefore, the Plaintiff brings this claim on behalf of herself and Jason's estate.

78. Defendant, Sheriff Christopher C. Kirk, is and was at all times relevant to this action a person under 42 U.S.C. section 1983, he is being sued in his individual capacity and at all times relevant to this case acted under the color of law and may be served with process wherever he may be found.

79. Defendant, Brazos County, is and was at all times relevant to this action a governmental entity and is a person under 42 U.S.C. section 1983 and at all times relevant to this case acted under the color of law and may be served with process wherever the County Judge may be found.

80. DOE-Medical Supervisor, is being sued in her/his individual capacity and at all times relevant to this case acted under the color of law and may be served with process wherever he may be found.

81. DOE-Jail Physician, is being sued in her/his individual capacity and at all times relevant to this case acted under the color of law and may be served with process wherever he may be found; and,

82. DOE-Jail Nurse, is being sued in his/her individual capacity and at all times relevant to this case acted under the color of law and may be served with process wherever he may be found.

### III. JURISDICTION AND VENUE

83. This Court has jurisdiction over Plaintiff's state and federal claims, under 28 U.S.C. sections 1331 and 2201, 42 U.S.C sections 1983 and 1988, and the Fourth and

Fourteenth Amendments to the United States Constitution, and supplemental jurisdiction under 28 U.S.C. section 1367(a), to hear Plaintiff's state law claims.

84. Venue is proper in this Court under 28 U.S.C. section 1391(b) because the incidents at issue occurred in Brazos County, Texas, which is in the Southern District of Texas.

### IV. CLAIMS FOR RELIEF

**Claim 1: 42 U.S.C. § 1983 Fourth and Fourteenth Amendment Violations**

85. The Plaintiff incorporates by reference all preceding paragraphs of this Amended Complaint as if set forth at length herein in this section.

86. This suit is brought pursuant to 42 U.S.C. § 1983, which is entitled the Civil Rights Act. The critical language of the Civil Rights Act sets forth, in part:

*"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."Fourteenth and Fourth Amendments: Due Process, Unlawful Search, Seizure, and Detention.*

87. On May 3, 2018, Brazos County was acting under the color of state law when it denied Jason medical care, without proper reason or authority, with deliberate indifference to Jason's rights.

88. Brazos County, their employees, and their agents, failed to train and failed to adequately supervise the actions and omissions of the jail staff, officers, contractors, employees and agents of the Brazos County Jail.

89. Sheriff Kirk, his employees, and his agents, failed to train and failed to adequately supervise the actions and omissions of the jail staff, officers, contractors, employees and agents of the Brazos County Jail.

90. While in the custody of Brazos County Jail, Jason did not receive adequate medical care for his Alprazolam withdrawal symptoms due to the policies, practices, and/or customs of the Brazos County Jail of depriving inmates of their prescribed medication after entering the jail, causing him much pain, mental anguish, and suicidal ideations.

91. Jason's died as a direct result of the acts and omissions of the Defendants. Those acts and omissions violated Jason's constitutional right to due process, to be free from unreasonable search and seizure and the privileges and immunities and rights guaranteed by the Fourteenth Amendment, making the Defendants liable to Plaintiffs under and pursuant to 42 U.S.C. sections 1983 and 1985.

92. At all times relevant hereto, Plaintiff had an inalienable and fundamental liberty interest protected by the Constitution.

93. Jason had the right to adequate medical care under the Fourth and Fourteenth Amendment.

94. DOE-Medical Supervisor, DOE-Jail Physician, and DOE-Jail Nurse failed to provide Jason with adequate medical care.

### Claim 2:   Wrongful Death Statute

95. The Plaintiff incorporates by reference all preceding paragraphs of this Amended Complaint as if set forth at length herein in this section. The Plaintiff brings this wrongful death action pursuant to the Texas Civil Practice and Remedies Code section 71.004(c). Pursuant to Texas Civil Practice and Remedies Code section 71.002 and Texas statutory and common law, each Defendant is liable for their own acts and omissions as well as the acts and omissions of the Brazos County Jail staff, officers, contractors, employees and agents of the Brazos County Jail.

96. Jason died as a result of the Defendants' deliberate indifference, reckless, wrongful acts and omissions, and careless actions.

97. Sheriff Kirk is the policy maker for Brazos County.

98. He is being sued in his individual capacity.

99. He knew that the Sandra Bland Act applied to him and his jail. He allowed the violation of the act by failing to train or supervise medical providers in the Brazos jail.

100. He was aware there would inmates, like Jason, who had chronic illnesses that needed medical attention and continuation of prescribed medications after being placed in custody of the jail.

101. DOE-Medical Supervisor, DOE-Jail Physician, and DOE-Jail Nurse and Brazos Jail were in receipt of Jason's medical history from his mother, Jason, and records from his primary care physician.

102. Brazos County, Sheriff Kirk DOE-Medical Supervisor, DOE-Jail Physician, and DOE-Jail Nurse not administer any medication to Jason during the period of his incarceration knowing the fatal risks of DVT.

103. Despite providing the jail staff, DOE-Medical Supervisor, DOE-Jail Physician, and DOE-Jail Nurse with his all of his medical conditions at intake, the medical personnel refused to treat him and ignored Jason and Ms. Nichols' complaints.

104. Jason would have been entitled to bring this action against Defendants if he had lived.

105. A reasonable and competent member of the law enforcement profession would have exercised under similar circumstances duties to:

    a. provide adequate medical care, not impose cruel and unusual punishment;

    b. Exercise ordinary or reasonable care;

    c. Exercise the degree of care, skill, and competence that a reasonable officer would exercise. The Defendants breached all of their duties.

106. The Defendants' acts and omissions, jointly and severally, proximately caused injuries and death to Jason.

107. The Plaintiff seeks unliquidated damages within the jurisdictional limits of this Court.

### Claim 3: Survival Claim

108. The Plaintiff incorporates by reference all preceding paragraphs of this Amended Complaint as if set forth at length herein in this section.

109. Pursuant to Texas Civil Practice and Remedies Code section 71.021 and Texas statutory and common law, the Defendants are liable for their own acts and omissions as well as of the Brazos County Jail staff, officers, contractors, employees and agents of the Brazos County Jail.

110. Jason would have asserted causes of action for personal injury to his person under the Texas Tort Claim Act, negligence statute, and 42 U.S.C. section 1983 before he died.

111. Jason would have been entitled to bring an action for the injury if he had lived, namely pain and suffering, as a result of the disregard of an excessive risk to his health or safety by refusing and delaying his medical care in providing his life saving medication.

112. Each Defendant's wrongful acts and omissions, jointly and severally, caused Mr. Jason's injuries for which the Plaintiff sues for all damages allowed by law.

*Conditions of Confinement*

113. Jason's medical condition was sufficiently serious because it had already been diagnosed by a physician as requiring treatment.

114. The failure to administer the appropriate prescription regimen has medically-known risks of death after the clot lodges in the lung.

115. The medical personnel could have prescribed a lower bunk, blood thinners or offered a compression sleeve, or tested for DVT, but did not do so.

116. Rather, the jail staff and medical personnel disregarded Jason's serious medical needs by intentionally denying and/or delaying access to medical care by failing to administer treatment after they had already received Jason's medical records.

*Failure to Train*

117. The unknown Medical supervisor(s) and Sheriff Kirk failed to train the jail staff and nurses that were responsible for Jason's care.

*Failure to Supervise*

118. The unknown Medical supervisor(s) and Sheriff Kirk failed to supervise the jail staff and nurses that were responsible for Jason's care.

119. In May 2018, it was well established that that failure to provide adequate medical care and discontinuing prescribed medication without seeking a qualified medical professional to review any prescription medication a prisoner is taking when the prisoner

17

is taken into custody as soon as possible was unconstitutional and a violation of Jason LeJunie's constitutional rights under the Fourth and Fourteenth amendment.

## VI. DAMAGES

120. The Plaintiff incorporates by reference all preceding paragraphs of this Amended Complaint as if set forth at length herein in this section. The Plaintiff experienced, and in all likelihood will experience, at least great pain and suffering in the past and in the future, great mental anguish in the past and future, loss of enjoyment of Jason's life, loss of consortium, loss of financial support and household services, comfort, and love and society. The Plaintiff seeks exemplary damages. The Plaintiff also brings claims for violations of Jason's Fourth and Fourteenth Amendment rights.

121. The Plaintiff has been damaged by the loss of companionship, consortium, and support that would have been provided by Jason but for his preventable death.

122. Jason suffered great mental anguish and pain in the minutes and hours before his death and such is actionable through his estate and funeral expenses are recoverable as well.

123. Award exemplary damages to the Plaintiff. All individuals, excluding the county, sued are liable for punitive damages as he were deliberately indifferent to Jason's constitutional rights and he did the acts knowingly, such acts, include recklessly detaining Jason by holding him for civil penalty and not for being suspected of a crime. These acts being extreme and outrageous and shocking to the conscious.

## VII. Attorneys' Fees

124. After prevailing herein, the Plaintiff is entitled to recover reasonable and necessary attorneys' fees and costs to enforce his constitutional rights under 42 U.S.C. sections 1983 and 1988 from the Defendant, as the prevailing parties.

## VIII. Prayer for Relief

125. For the reasons set forth herein, Plaintiff respectfully requests that the Defendants, Brazos County and Sheriff Kirk, be cited to appear and answer herein, and that the Plaintiff have a final judgment against the Defendants, jointly and severally, for actual damages above the jurisdictional minimum of the Court, compensatory damages above the jurisdictional minimum of the Court, nominal damages above the jurisdictional minimum of the Court, mental anguish, exemplary damages as allowed by law, pre-judgment and post-judgment interest, costs of court, attorneys' fees and expenses, and all other relief to which the Plaintiff is justly entitled, at law or in equity. Plaintiff respectfully seeks leave to file an Amended Complaint rectifying any and all identifiable pleading insufficiencies.

    Respectfully submitted,

    By:/s/ U.A. Lewis
    The Lewis Law Group
    U.A. Lewis
    SBN: 24076511
    FBN: 1645666
    P.O. Box 27353
    Houston, TX 77227

Phone: (713) 570-6555
Fax: (713) 581-1017
MyAttorneyAtLaw@gmail.com
Attorneys for the Plaintiff

CERTIFICATE OF SERVICE

I certify that on December 2, 2019, the foregoing document was served, via the Court's CM/ECF Document Filing System, upon each attorney of record.

/s/ U.A. Lewis
U.A. Lewis